[Cite as *State v. Yoder*, 2011-Ohio-4975.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00027 |
| SAM YODER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2010CR1447

JUDGMENT:      Affirmed in part, Reversed in part & Remanded

DATE OF JUDGMENT ENTRY:      September 26, 2011

APPEARANCES:

For Plaintiff-Appellee

JOHN FERRERO
STARK COUNTY PROSECUTOR
110 Central Plaza S., Ste. 510
Canton, OH 44702

For Defendant-Appellant

DEREK J. LOWRY
Crawford, Lowry & Associates
116 Cleveland Ave. N.W., Ste. 800
Canton, OH 44702

*Gwin, P.J.*

{1}     Defendant-appellant Sam Yoder appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of Rape with a sexually violent predator specification, a sexual motivation specification and repeat violent offender specification, one count of Kidnapping with a sexually violent predator specification, a sexual motivation specification and repeat violent offender specification and one count of Assault. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{2}     On the evening of September 17, 2010, Amanda Baker was walking down Fulton Street in Canton, Ohio, with the intent to engage in prostitution. Ms. Baker walked down 7th and Brown Street in Canton and saw a red truck coming down the road. She waved and the driver, appellant, pulled over. Ms. Baker got in the truck.

{3}     Appellant said he wanted to have sex. Ms. Baker said that would be alright if appellant agreed to use a condom. Appellant said he does not use condoms. Ms. Baker advised appellant that if there was no condom, there would be no sex. Appellant then agreed to Ms. Baker's terms, and drove to a Sunoco station to buy a condom. Appellant purchased the condom and gave Ms. Baker thirty dollars, the agreed upon price for the transaction.

{4}     Appellant then drove to the southwest side of Canton and parked behind some warehouse buildings. Ms. Baker removed her hoodie, underwear and shoes and lay down on the bench seat of the truck. Appellant tried to put on the condom, but was not fully erect. He attempted to engage in vaginal intercourse with Ms. Baker, but again,

was not fully erect. He told Ms. Baker he couldn't feel anything. Ms. Baker asked appellant what he wanted to do since he couldn't feel anything.

{5}     Appellant asked Ms. Baker "Do you like to fuck?" Ms. Baker said yes, thinking the answer would arouse appellant. But instead, appellant grabbed Ms. Baker by the throat squeezed and said "well then, you're going to fuck without a condom." Appellant told Ms. Baker that if she did not want to get hurt, she was going to do exactly as he demanded.

{6}     Appellant then entered Ms. Baker without a condom, but still was not fully erect. So he told her; "You know what? You're going to suck my dick." Ms. Baker acted like she was going to comply, but then made a break for the door of the truck. Appellant caught her by the hair and dragged her back into the truck. Appellant climbed on top of her, grabbed her neck and face and pressed down. As he did, one of his fingers went into Ms. Baker's eye. Ms. Baker struggled, broke free and fled half dressed, barefoot and with her skirt still hiked up around her waist.

{7}     While all this was going on, Thomas Mertz was on his way to a garage he owns near the warehouses. As he approached the area, he noticed appellant's red truck parked behind the buildings. Because there had been some trouble with theft and dumping in the area, Mr. Mertz planned to circle around behind the truck to see what the driver was doing. Before he could get there, however, Ms. Baker ran up to his truck, bloody, crying and screaming she had been raped.

{8}     Ms. Baker got in the car with Mr. Mertz and Mr. Mertz asked if a red truck was still behind the buildings. Ms. Baker said yes, and that the driver of the truck was the man who raped her. Mr. Mertz located the truck, wrote down the plate number and

started to drive Ms. Baker to Mercy Hospital. On the way, Mr. Mertz spotted Canton Police officer Scott Dendinger getting out of his cruiser at a Subway restaurant. He pulled up beside Officer Dendinger and told him what happened because he believed the driver of the red truck was still in the area.

**{9}** Officer Dendinger called the matter in and then went to Mercy to speak with Ms. Baker. Ms. Baker told Officer Dendinger what she had been doing and how she got into the situation. She did not know appellant's name, but gave Officer Dendinger a description. Mr. Mertz gave Officer Dendinger the plate number on the truck. Officer Dendinger then turned the matter over to the detective bureau.

**{10}** Detective Bill Adams was assigned to investigate the matter on September 16, 2010. He spoke with both Mr. Mertz and Ms. Baker and each told Detective Adams what they had reported to Officer Dendinger. He sent the identification bureau to the scene where Ms. Baker's hoodie and shoes were recovered.

**{11}** On September 20, 2010, Detective Adams learned appellant was in the city jail and went to talk to him. Detective Adams knew that in all likelihood, appellant was at the city jail for arraignment in the Canton Municipal Court, but did not ask if he had appeared in court or if he was represented by counsel.

**{12}** Detective Adams provided appellant with his *Miranda* warnings and appellant agreed to speak with Detective Adams. Appellant admitted he paid Ms. Baker for sex, that it had went awry and that he had assaulted her. He claimed that Ms. Baker had removed the condom and that although he had requested fellatio, he had not forced the issue. He could not explain why he had assaulted Ms. Baker. He insisted the act was consensual, and claimed he accidentally put his finger in Ms. Baker's eye. He

admitted, however, that he grabbed Ms. Baker to prevent her from leaving the truck after he asked for fellatio.

{13}   Appellant's truck was seized and processed. Hair and blood were found on the front seat. Swabs from Ms. Baker's rape kit and a DNA standard from appellant were compared. No DNA from appellant was present on Ms. Baker's vaginal swabs. There was, however, DNA from another male present on the swabs. Ms. Baker sustained injury to her eye and needed to see a specialist to address the issue. Her nose was also fractured.

{14}   As a result of these events, in October 2010, the Stark County Grand Jury returned an indictment charging appellant with one count of rape. In December, 2010, the grand jury issued a superseding indictment charging appellant with one count of Rape with a sexually violent predator specification, a sexual motivation specification and a repeat violent offender specification; Kidnapping with a sexually violent predator specification, a sexual motivation specification and a repeat violent offender specification and Felonious Assault with a repeat violent offender specification.

{15}   Appellant filed a motion to suppress his statements to Detective Adams. He argued that because he had already been arraigned and was represented by counsel when Detective Adams questioned him, that Detective Adams could not question him without counsel present. The trial court rejected this argument and overruled the motion to suppress.

{16}   The matter proceeded to trial in December 2010. The State presented testimony from Ms. Baker, Mr. Wertz, Officer Dendinger and Detective Adams. Appellant presented no evidence. After hearing all the evidence and deliberating, the

jury found appellant guilty of Rape and Kidnapping and the attendant sexual motivation specifications. The jury found Yoder not guilty of Felonious Assault, but guilty of the lesser included offense of Assault.

{17} Because the jury found appellant committed the Rape and Kidnapping with sexual motivation, the jury then heard evidence as to the sexually violent predator specifications. Appellant stipulated that he had previously been convicted of attempted rape and felonious assault, but argued that two incidents were not enough to support a finding, beyond a reasonable doubt, that he was likely to engage in the future in one or more sexually violent offenses.

{18} For the sexually violent predator trial, the state presented evidence from Deputy Rick Stauffer. Appellant presented no evidence.

{19} Deputy Stauffer testified that he investigated an incident involving appellant and a prostitute named Lori Griesen in March, 2002. On an unseasonably frigid Sunday in March, Griesen showed up at a business in Canton wearing only a sweater and a glove on one of her feet. It was a Sunday and a mechanic at the business where Ms. Griesen showed up was the only person around. Ms. Griesen said she had been raped, told the man what the suspect was driving and gave him a plate number. The mechanic called the Canton Police department.

{20} The plate number came back to appellant, who then lived in Wayne County. Ms. Griesen told police that she had been walking near the Town Manor Motel in Canton when appellant drove up and offered her a ride home. She got in, but appellant did not take her home. Instead, he took her a secluded area behind some

businesses that were closed for the day. He then started ripping Ms. Griesen's clothing off. She noticed that appellant had his pants pulled down.

{21} Ms. Griesen struggled and grabbed the rearview mirror in an attempt to use it as a weapon. She attempted to get out of the car but the interior handle had been removed from the passenger side, so she struggled to get out the driver's side. Appellant hit her with a tire iron and with some sticks. While struggling to exit the vehicle, Ms. Griesen had an involuntary bowel movement. Appellant threw the feces at her.

{22} Deputy Stauffer located appellant and questioned him about the incident. Appellant admitted to being on a "date" with Ms. Griesen. He claimed she was out "ho-ing," that he picked her up, found a parking spot and partially removed his pants. He claimed that there was then a "misunderstanding." He admitted to ripping Ms. Griesen's clothing off, striking her with a tire iron, hitting her with a stick, and grabbing her by the neck. Appellant claimed, however, that he was the victim and was merely defending himself from Ms. Griesen.

{23} Deputy Stauffer went to Mercy Hospital and observed Ms. Griesen's injuries. She sustained broken ribs, numerous bruises, abrasions to her face, anus, legs, throat and back and lacerations on her head and right wrist that required stitches.

{24} Appellant subsequently pled guilty to the Felonious Assault and Attempted Rape of Ms. Griesen.

{25} While the jury deliberated on the sexually violent predator specification, the court considered the two repeat violent offender specifications. Again appellant

stipulated to his prior convictions of Felonious Assault and Attempted Rape. The court found appellant to be a repeat violent offender.

{26} Thereafter, the jury returned verdicts on the sexually violent predator specifications, finding appellant guilty of both specifications. Appellant was subsequently sentenced to 10 years to life for the Rape conviction and an additional mandatory and consecutive 10 year term for the repeat violent offender specification. He was given an identical sentence for Kidnapping. Appellant was ordered to serve the sentences consecutively for a total term of 40 years to life. For the Assault conviction, appellant was ordered to serve a concurrent 180 days.

{27} At the Sentencing Hearing, Defense Counsel argued that the counts of Rape and Kidnapping should merge because there was no separate animus for these offenses. Counsel also objected when the Court declined to merge these counts for sentencing.

{28} Appellant has timely appealed raising five Assignments of Error,

{29} "I. THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING HEARSAY TESTIMONY.

{30} "II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{31} "III. THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S MOTION TO SUPPRESS.

{32} "IV. THE TRIAL COURT ERRED IN NOT FINDING THE CHARGES OF RAPE AND KIDNAPPING TO BE ALLIED OFFENSES AND MERGING THESE COUNTS FOR SENTENCING.

**{33}** "V. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I. & II.

**{34}** Appellant's First and Second Assignments of Error raise common and interrelated issues; therefore, we will address the arguments together.

**{35}** In his First Assignment of Error, appellant argues that the trial court erred during his trial for the sexually violent predator specification when it admitted hearsay statements from Deputy Stauffer regarding the facts of his prior sexually oriented offense. Related to his First Assignment of Error, appellant contends that his counsel provided ineffective assistance when he failed to object to Deputy Stauffer's hearsay testimony.

**{36}** An offender cannot be specified as a sexually violent predator ["SVP"] unless the SVP specification is charged in the indictment or count in the indictment. R.C. 2941.148. In fact, the Revised Code precludes the application of all the specifications contained in R.C. 2941.14 through 2941.1416, unless these specifications are properly included in an indictment. *State v. Wagers*, Preble App. No. CA2009-06-018, 2010-Ohio-2311 at ¶ 23.

**{37}** R.C. 2971.01(H)(1) now states that a "[s]exually violent predator" is "a person who, on or after January 1, 1997, *commits* a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.) Because of the potential for enhanced penalties, in order for a sexually violent predator specification to apply to an offender, the state must prove beyond a

reasonable doubt that R.C. 2971.01(H) applies to the offender. See, *State v. Williams,* 88 Ohio St.3d 513, 532, 2000-Ohio-428, 728 N.E.2d 342. The Supreme Court of Ohio has noted that where a prior conviction elevated the degree of the offense with which the defendant was charged, it "did not simply enhance the penalty. It transformed the crime itself by increasing its degree. In such a case the prior conviction is an essential element of the crime, and must be proved by the state." *State v. Allen* (1987), 29 Ohio St.3d 53, 54, 506 N.E.2d 199.

**{38}** Effective April 29, 2005. R.C. 2971.01(H)(1) was revised. "Notably, in the opening paragraph of the statutory changes in H.B. 473, the legislature stated that the purpose of the change to R.C. 2971.01(H)(1) was 'to clarify that the Sexually Violent Predator Sentencing Law does not require that an offender have a prior conviction of a sexually violent offense in order to be sentenced under that law.' 2004 Ohio Laws File 163 (Am.Sub.H.B.473)." *State v. Wagers,* supra at ¶ 30. As the Ninth District has noted, "[b]ased on the statute's current language, a person need not have already been convicted of a sexually violent offense at the time of indictment to be indicted for and subsequently found guilty of a sexually violent predator specification." *State v. Hardges,* Summit App. No. 24175, 2008-Ohio-5567, at ¶ 50. Such a finding can be made based on the conviction(s) of the underlying offense(s) contained in the present indictment. *State v. Hardges,* Summit App. No. 24175, 2008-Ohio-5567.

**{39}** The question in the case at bar, as one court has observed, is while "[i]t is clear that the legislature intended evidence regarding past convictions to be admissible as an element of the offenses and that the state must prove the past convictions beyond a reasonable doubt. It is not as clear how much evidence is allowed in to

establish the past convictions." *State v. Moissis,* Lake App. No. 2000-L-187, 2002-Ohio-4955 at ¶ 40.

**{40}** Whenever the State must prove a prior conviction, a certified copy of the entry of judgment of the prior conviction, together with sufficient evidence to identify the accused named in the entry as the offender in the case at bar, is sufficient proof of the prior conviction. R.C. 2945.75(B); *State v. McDowell* (2002), 150 Ohio App.3d 413, *2002-Ohio-6712; State v. Harrington,* 3d Dist. No. 8-01-20, 2002-Ohio-2190; *State v. Galloway,* Richland App. No. 2003-CA-0086, 2004-Ohio-2273 at ¶ 31.

**{41}** Due process requires that the government prove beyond a reasonable doubt every element necessary to constitute the crime with which the accused is charged. *In Re: Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. Due process further forbids the courts from requiring the person accused of a criminal offense affirmatively disprove any element of the crime. *Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508.

**{42}** In the case at bar, despite appellant's open court admission that he had been previously convicted of Attempted Rape and Felonious Assault, the state introduced substantial evidence of the circumstances and facts involved in the commission of those crimes.

**{43}** The Ohio Supreme Court has held that, " '[a]s a general rule, the introduction of evidence tending to show that a defendant has committed another crime *wholly independent* of the offense for which he is on trial is prohibited.' " (Emphasis added.) *State v. Adams* (1978), 53 Ohio St.2d 223, 230, 7 O.O.3d 393, 397, 374 N.E.2d 137, 141. See, *e.g., State v. Strong* (1963), 119 Ohio App. 31, 26 O.O.2d 134, 196

N.E.2d 801 (details of like acts of defendant inadmissible where they have no relation to offense for which defendant is on trial); *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Evid.R. 404(A).

{44}    The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723.This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. *State v. Schaim*, 65 Ohio St.3d 51, 60, 1992-Ohio-31, 600 N.E.2d 661, 669. *State v. Miley*, Richland App. Nos. 2005-CA- 67, 2006-CA-14, 2006-Ohio-4670 at ¶ 58.

{45}    "In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct." *Williams v. New York* (1949), 337 U.S. 241, 246-247, 69 S.Ct. 1079, 1083.

**{46}** There is no doubt that in the case at bar, the testimony by Deputy Stauffer regarding the underlying facts of appellant's prior convictions went beyond merely establishing the existence of the prior convictions.

**{47}** However, in order to determine whether the admission of testimony concerning the facts underlying appellant's prior convictions is reversible error, we must evaluate the relationship between that evidence and the totality of other evidence properly introduced by the state at trial. If there is other overwhelming evidence of guilt, the admission of the testimony regarding the facts of the prior convictions will be deemed harmless error. *State v. Moritz* (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268. (Citing *Schneble v. Florida* (1972), 405 U.S. 427, 430, 92 S.Ct. 1056, 1059); *State v. Stevenson*, Stark App. No. 2005-CA-00011, 2005-Ohio-5216 at ¶ 46.

**{48}** In the case at bar, the inadmissible testimony related to the SVP. Appellant had already been convicted of the underlying charges. To prove the sexually violent predator specifications the state must prove beyond a reasonable doubt that appellant is likely to engage in the future in one or more sexually violent offenses. R.C. 2971.01(H)(1). In this respect, R.C. 2971.01(H)(2) provides:

**{49}** "(2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

**{50}** "(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act

or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

**{51}** "(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

**{52}** "(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

**{53}** "(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

**{54}** "(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

**{55}** "(f) Any other relevant evidence."

**{56}** A review of the record reveals that the State presented sufficient evidence to prove beyond a reasonable doubt that appellant had, including the conviction in the case at bar, two or more prior convictions in separate criminal actions for sexually oriented offenses. Appellant stipulated to his prior conviction for Attempted Rape and was convicted in this case of Rape and Kidnapping in the present case together with the sexual motivation specification for each count. Thus, the prior conviction element was met in this case by proof independent of Deputy Stauffer. Accordingly, the improper admission of underlying facts regarding the prior convictions is harmless error.

**{57}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's

essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136.

{58} In light of our discussion of appellant's First Assignment of Error, appellant's claim of ineffective assistance of counsel raised in his Second Assignment of Error must fail under the second prong of the *Strickland* test. Even if trial counsel's performance fell below an objective standard of reasonable representation, which we do not decide, we find any error was harmless.

{59} We acknowledge the standard for harmless error in the admission of inflammatory or otherwise erroneous evidence is different from the standard under an ineffective assistance of counsel analysis. However, for the same reasons advanced in our discussion of appellant's First Assignment of Error, we cannot find the result of the trial was unreliable or the proceeding was fundamentally unfair because of the performance of trial counsel. *State v. Boucher* (Dec. 23, 1999), Licking App. No. 99 CA 00045.

{60} Appellant's First and Second Assignments of Error are overruled.

III.

{61} In his Third Assignment of Error, appellant maintains that the trial court erred when it denied his motion to suppress statements he made to Detective Adams. We disagree.

{62} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 2003-

Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{63} Appellant argues officers contacted appellant while he was being held in the Canton City Jail shortly after he was arraigned and appointed counsel to represent him.

{64} The Sixth Amendment right to counsel attaches at "the initiation of adversary judicial criminal proceedings" such as a preliminary examination. *Moore v. Illinois* (1977)*,* 434 U.S. 220, 231; 98 S Ct 458.

**{65}** Once the Sixth Amendment right to counsel has attached, however, a defendant may still validly waive that right to counsel even if the interrogation was initiated by the police. *Montejo v. Louisiana,* --- U.S. ----; 129 S Ct 2079; 173 L.Ed. 2d 955 ( 2009). *Montejo* reflects a recent change in the law. Previously, in *Michigan v. Jackson,* 475 U.S. 625, 636; 106 S Ct 1404; 89 L.Ed.2d 631 (1986), overruled *Montejo,* 129 S Ct at 2090-2091, the United States Supreme Court held that once the Sixth Amendment right to counsel attached, a defendant could not validly waive that right to counsel in police initiated custodial interrogation. *Jackson,* 475 U.S. at 636. The holding in *Jackson* was expressly overruled in *Montejo. Montejo,* 129 S Ct at 2090. The United States Supreme Court held that the right to counsel may be validly waived in custodial interrogation after the Sixth Amendment right to counsel has attached, even if the interrogation was police initiated. *Montejo,* 129 S Ct at 2090. See, *People v. Calkins* (Mich. App, July 27, 2010), 2010WL2925359. By overruling *Jackson,* the court eliminated the per se invalidation of *Miranda* waiver once counsel was requested. *State v. Jones*, Butler App. No. CA2009-05-140, 2011-Ohio-2097 at ¶ 76.

**{66}** While appellant was undisputedly appointed counsel, he did not invoke his *Miranda* rights at any time prior to his interview with Detective Adams. Appellant relies solely on his appointment of counsel at arraignment to demonstrate that he invoked his rights. However, the *Montejo* court specifically stated, "we have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation [.]' * * * What matters for *Miranda* and *Edwards* is what happens with the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing." *Montejo,* 129 S.Ct.

at 2091, quoting *McNeil v. Wisconsin* (1991), 501 U.S. 171, 182, 111 S.Ct. 2204, fn. 3. *State v. Jones*, supra at ¶77.

**{67}** In the case at bar, the record is void of any reference to appellant invoking his *Miranda* rights. In fact, the record in the case at bar establishes just the opposite; appellant does not dispute that he validly waived his *Miranda* warnings and agreed to speak with Detective Adams. Rather, appellant argues we should not follow the *Montejo* decision when interpreting the Ohio Constitution. [Appellant's Brief at 8.]. However, in *State v. Gardner*, 118 Ohio St.3d 420, 889 N.E.2d 995, 2008-Ohio-2787, the Court explained,

**{68}** "We are, of course, free to determine that the Ohio Constitution confers greater rights on its citizens than those provided by the federal Constitution, and we have not hesitated to do so in cases warranting an expansion. See, e.g., *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115 (holding that the Ohio Constitution's Takings Clause affords greater protection than the corresponding federal provision). But despite the fact that state constitutions are a vital and independent source of law, see, generally William J. Brennan Jr., The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights (1986), 61 N.Y.U.L.Rev. 535, as an institution, "this court has not, on most occasions, used the Ohio Constitution as an independent source of constitutional rights." *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 42, 616 N.E.2d 163, fn. 8. We must be cautious and conservative when we are asked to expand constitutional rights under the Ohio Constitution, particularly when the provision in the Ohio Constitution is akin to a provision in the U.S. Constitution that has been reasonably interpreted by the Supreme

Court. *State v. Brown,* 99 Ohio St. 3d 323, 2003-Ohio-3931, 792 N.E. 2d 175, ¶ 28 and 29 (O'Connor and Stratton, JJ., dissenting) (where the language used by the federal and Ohio Constitutions is "virtually identical," it is "illogical" to suggest that the provisions should be interpreted differently)...Our analysis of similar constitutional provisions should not be driven simply by disagreement with the result reached by the federal courts' interpretation." Id. at ¶76.

{69}  In the case at bar, appellant stipulated that he was read his *Miranda* rights by Detective Adams prior to the discussion, and that appellant did validly waive his *Miranda* rights. (Supp. T. Dec. 13, 2010 at 10). The trial court therefore did not err in denying his motion to suppress.

{70}  Appellant's Third Assignment of Error is overruled.

IV.

{71}  In appellant's Fourth Assignment of Error, he argues that his convictions for kidnapping and rape are allied offenses of similar import, and should have merged for sentencing. We agree.

{72}  In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson* court overruled *State v. Rance,* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Ohio Supreme Court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25.

{73}  The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the

commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id*.,* quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 119, 526 N.E.2d 816. Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{74} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at ¶ 51.

{75} Under *Johnson*, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. Id.

{76} The Supreme Court of Ohio has previously held that rape and kidnapping can be allied offenses of similar import. *State v. Donald* ( 1979), 57 Ohio St. 2d 73, 386 N.E. 2d 1341, syllabus. However, the court acknowledged that even though the offenses are of similar import, a person can be convicted of both if the offenses were either (1) committed with a separate animus; or (2) committed separately.

**{77}** In *State v. Logan,* the court laid out the requirements in order to determine what constitutes a separate animus for kidnapping and a related offense. *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345. Specifically, the court stated:

**{78}** "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

**{79}** "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

**{80}** "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at syllabus.

**{81}** In the case at bar, we must determine whether appellant in fact committed both offenses by way of a single act, performed with a single state of mind, or whether he had separate animus for each offense. *Johnson,* 2010-Ohio-6314 at ¶ 49, 51; R.C. 2941.25(B).

**{82}** In the case at bar, there was no asportation or secreting of the victim. Ms. Baker voluntarily entered the van. The van was driven to a secluded location. The purpose was clearly to engage in the consensual sexual act.

{83} In the case at bar, the encounter turned from consensual to force when appellant grabbed Ms. Baker by the throat squeezed and said "well then, you're going to fuck without a condom." Appellant told Ms. Baker that if she did not want to get hurt, she was going to do exactly as he demanded. She thereafter attempted to exit the vehicle at which time appellant caught her by the hair and dragged her back into the truck. Appellant climbed on top of her, grabbed her neck and face and pressed down. As he did, one of his fingers went into Ms. Baker's eye.

{84} In the case at bar, the use of force and subsequent restraint were utilized by appellant to force Ms. Baker to perform a sexual act that she had not agreed to perform. Under the facts of this case we are compelled to find that this was a single act committed with a single state of mind.

{85} Accordingly appellant's Fourth Assignment of Error is sustained. In accordance with the Ohio Supreme Court's decision in *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2 at ¶ 25*,* we remand this case to the trial court for further proceedings consistent with that opinion. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Appellant's convictions are affirmed.

V.

{86} In his Fifth Assignment of Error appellant maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence,

{87} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, which requires a court of appeals to determine whether

"after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard).  See, *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

{88}    *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See Id*.* at 318-319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

{89}    Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.  See, *State v. Clay*, supra at ¶ 70.

**{90}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " Id. at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, Id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{91}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St. 3d 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State*

*v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{92} In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶38, 775 N.E.2d 498.

{93} Appellant first argues that his convictions for Rape and Kidnapping are against the manifest weight and sufficiency of the evidence.

{94} In order to convict appellant of Rape pursuant to R.C. 2907.02(A)(2), the State had to prove appellant engaged in sexual conduct with Ms. Baker by force or threat of force. "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{95}** In the case at bar, Ms. Baker testified that she agreed to have sex with appellant, but only if he agreed to use a condom. During the act, appellant decided he would rather not use the condom. When Ms. Baker told appellant she did not want to have sex without a condom, he grabbed her by the throat, told her that if she did not want to get hurt, she would do exactly as she was told. Appellant then inserted his partially erect penis into Ms. Baker's vagina.

**{96}** "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{97}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of Rape. We hold, therefore, that the State met its burden of production regarding each element of the crime of Rape and, accordingly, there was sufficient evidence to support appellant's conviction.

**{98}** To find the appellant guilty of Kidnapping as charged in appellant's case, the jury would have to find appellant, by force, threat or deception removed Ms. Baker from the place where she was found or restrain the liberty of Ms. Baker in order to engage in sexual activity with her against her will. R.C. 2905. 01(A)(4). "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without

limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B)

{99}    Ms. Baker testified that appellant grabbed her by the throat squeezed and said "well then, you're going to fuck without a condom." Appellant told Ms. Baker that if she did not want to get hurt, she was going to do exactly as he demanded. She thereafter attempted to exit the vehicle at which time appellant caught her by the hair and dragged her back into the truck. Appellant climbed on top of her, grabbed her neck and face and pressed down. As he did, one of his fingers went into Ms. Baker's eye.

{100} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of Kidnapping. We hold, therefore, that the State met its burden of production regarding each element of the crime of Kidnapping and, accordingly, there was sufficient evidence to support appellant's conviction for Kidnapping.

{101} Appellant additionally argues as he did in his First Assignment of Error supra that the evidence admitted during his sexually violent predator trial was entirely hearsay. Appellant maintains that because the evidence against him consisted of hearsay, the evidence was not sufficient to support a finding that he is guilty of the sexually violent predator specifications and his convictions are against the manifest weight of the evidence.

{102} As stated in our disposition of appellant's First Assignment of Error, all that the State needed to show in order to prove the sexually violent predator specifications was that appellant has two or more convictions for a sexually oriented offense.

Appellant stipulated to his prior conviction and had been convicted of two more sexually oriented offenses in the instant matter. The State thereby produced sufficient evidence to support the conviction.

{103} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St. 2d 279, 376 N.E. 2d 578.

{104} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

{105} Although appellant cross-examined the witnesses and argued that the victim had consented to sexually activity and that her version of the events was not credible, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.

**{106}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

**{107}** The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

**{108}** Appellant's Fifth Assignment of Error is overruled.

**{109}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part. In accordance with the Ohio Supreme Court's decision in *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2 at ¶ 25*,* we remand this case to the trial court for further proceedings consistent with that opinion. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Appellant's convictions are affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0907

[Cite as *State v. Yoder*, 2011-Ohio-4975.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
SAM YODER                              :
                                       :
                                       :
              Defendant-Appellant      :        CASE NO. 2011-CA-00027


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part. In accordance with the Ohio Supreme Court's decision in *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2 at ¶ 25*,* we remand this case to the trial court for further proceedings consistent with that opinion. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Appellant's convictions are affirmed.  Costs divided equally between the parties.


                                    _____
                                      HON. W. SCOTT GWIN

                                      _____
                                      HON. WILLIAM B. HOFFMAN

                                      _____
                                      HON. SHEILA G. FARMER

[Cite as *State v. Yoder*, 2011-Ohio-4975.]